UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRIAN S. GREATHOUSE,

                  Plaintiff,                        Case No.: 3:14-cv-440

    vs.

COMMISSIONER OF                          District Judge Walter H. Rice
SOCAL SECURITY,                    Magistrate Judge Michael J. Newman

                  Defendant.

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[2] This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 9), the Commissioner's memorandum in opposition (doc. 10), Plaintiff's reply (doc. 11), the administrative record (doc. 6),[3] and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[3] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I.

## A.  Procedural History

Plaintiff alleges a disability onset date of October 30, 2009.  PageID 304-13.  He claims disability as a result of a number of impairments including, *inter alia*, bipolar disorder and anti-social personality disorder.  PageID 54.

After initial denials of his applications, Plaintiff received hearings before ALJ Amelia G. Lombardo on March 1, 2012, August 9, 2012, and February 5, 2013.  PageID 74-151.  The ALJ issued a written decision on August 16, 2013 finding Plaintiff met Listing § 12.08 for personality disorders from October 30, 2009 (his alleged onset date) through December 31, 2010, and was thus disabled for that closed period.  PageID 50-65.  The ALJ found that, as of January 1, 2011, Plaintiff's disability ceased because of medical improvement.  *Id.*  The ALJ's findings were as follows:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.   The claimant has not engaged in substantial gainful activity since October 30, 2009, the date the claimant became disabled (20 C.F.R. 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*);

3.   From October 30, 2009 through December 31, 2010, the period during which the claimant was under a disability, the claimant had the following severe impairments: bipolar disorder and anti-social personality disorder (20 C.F.R. 404.1520(c) and 416.920(c)).

4.   From October 30, 2009 through December 31, 2010, the period during which the claimant was disabled, the severity of the claimant's impairments met the criteria of section 12.0[8] of 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 416.920(d), 416.925).

5.   The claimant was under a disability, as defined by the Social Security Act, from October 30, 2009 through December 31, 2010 (20 CFR 404.1520(d) and 416.920(d)).

6.      The claimant has not developed any new impairment or impairments since January 1, 2011, the date the claimant's disability ended. Thus, the claimant's current severe impairments are the same as that present from October 30, 2009 through December 31, 2010.

7.      Beginning January 1, 2011, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1594(f)(2) and 416.994(b)(5)(i)).

8.      Medical improvement occurred as of January 1, 2011, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

9.      The medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals the severity of a listing (20 CFR 404.1594(c)(3)(i) and 416.994(b)(2)(iv)(A)).

10.     After careful consideration of the entire record, the undersigned finds that, beginning January 1, 2011, the claimant has had the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels but with the following nonexertional limitations: unskilled, low stress work, defined as no assembly line production quotas and not fast paced; no contact with the general public; and occasional contact with coworkers and supervisors.

11.     The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

12.     Since January 1, 2011, the claimant has been a younger individual age 18-49 (20 C.F.R. 404.1563 and 416.963).

13.     The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

14.     Beginning January 1, 2011, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

15.     Beginning January 1, 2011, considering his age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1560(c), 404.1566, 416.960(c) and 416.966).

     16.    The claimant's disability ended January 1, 2011 (20 C.F.R. 404.1594(f)(8) and 416.994(b)(5)(vii)).

PageID 54-65.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's partial non-disability finding the final administrative decision of the Commissioner. PageID 38-40. Plaintiff then filed this timely appeal, challenging the decision granting a closed period of disability and denying his claim for any period after December 31, 2010. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

     **B.**    **Evidence of Record**

In her decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 54-64. Plaintiff, in his Statement of Errors, also provides an extensive summary of the record evidence; specifically, testimony at the three administrative hearings. Doc. 9 at PageID 1210-18. The Commissioner's response to the Statement of Errors offers no objections to Plaintiff's recitation of evidence and defers to the ALJ's discussion of the evidence. Doc. 10 at PageID 1229. Accordingly, except as otherwise noted in this Report and Recommendation, the undersigned incorporates the ALJ's recitation of the evidence as well as Plaintiff's undisputed summary of the evidentiary record.

## II.

    **A.**  **Standard of Review**

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen* v. *Comm'r of Soc. Sec.,* 478

F.3d 742,745-46 (6th Cir. 2007).  In performing this review, the Court must consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled.  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

**B.  "Disability" Defined**

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act.  42 U.S.C. § 423(d)(1)(A).  Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations.  20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step ends the

ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

If a claimant is found disabled at any point in the process, the ALJ must determine whether his or her disability continues through the date of the decision. *Sturgill v. Astrue*, No. 1:08-cv-687, 2010 WL 715672, at *9 (S.D. Ohio Feb. 23, 2010). To do so, the ALJ must follow the eight-step evaluation process outlined in 20 C.F.R. § 404.1594:

1. If the claimant is engaging in substantial gainful activity, his disability will be found to have ended;

2. If the claimant is not engaged in substantial gainful activity, the claimant's disability will be found to continue if his impairment or combination of impairments meets or equals the severity of an impairment listed in 20 C.F.R. pt. 404, App. 1;

3. If the claimant's impairment(s) does not satisfy a Listing, then the agency must determine whether there has been medical improvement as shown by

a decrease in medical severity. If there has been a decrease, then the evaluation proceeds to step 4; if the medical severity has not decreased, then the evaluation proceeds to step 5;

4. Having found medical improvement by a decrease in medical severity, the agency must determine whether the improvement is related to the claimant's ability to do work, that is, whether or not there has been an increase in the RFC based on the impairment that was present at the time of the most recent favorable medical determination. If the improvement does not relate to the claimant's ability to work, then the evaluation proceeds to step 5; and if it does so relate, then the evaluation proceeds to step 6;

5. Having found either that there was no medical improvement (step 3), or that the medical improvement is not related to the claimant's work ability (step 4), the agency next considers whether any exceptions apply;

6. Having found that the claimant's medical improvement is related to his ability to work (step 4), or that a particular exception applies (step 5), the agency must determine if the claimant currently has a severe impairment. If the claimant does not have a severe impairment, he no longer is disabled;

7. If the claimant is found to have a severe impairment, the agency will assess his RFC based on his current impairment(s) and, if the claimant can perform his past work in light of his new RFC, the claimant is no longer disabled; and

8. If the claimant can no longer perform his past work, the agency will find the claimant is not disabled if he can perform other work, given his RFC, age, education, and vocational experience.

20 C.F.R. § 404.1594(f)(1)-(8). While there is no presumption of continuing disability, *Sturgill*, 2010 WL 715672, at *9 (citations omitted), the burden of proof in establishing medical improvement lies with the Commissioner. *Couch v. Comm'r of Soc. Sec.,* No. 1:11-cv-174, 2012 WL 394878, at *10 (S.D. Ohio Feb. 7, 2012) (citing *Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358, 361 (6th Cir. 2001)).

**III.**

On appeal, Plaintiff argues that, in finding that his disability ended on January 1, 2011, the ALJ erred in weighing the medical opinion evidence -- specifically, the opinions of examining psychologist Mary Ann Jones, Ph.D. and medical expert ("ME") Mary Buban, Psy.D. Doc. 9 at PageID 1207.

 "[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). Treating physicians and psychologists top the hierarchy. *Id*. "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Id*. "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

Unless the opinion of a treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [the 20 C.F.R. § 404.1527(c)] factors, regardless of their source[.]" *Walton v. Comm'r of Soc. Sec*., No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999). These factors include: the length of treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; supportability of the opinion, consistency of the opinion with the record as a whole; and any specialization of the medical source. 20 C.F.R. § 404.1527(c). The ALJ's explanation in this regard must be "meaningful." *Ott v. Comm'r of Soc. Sec.*, No. 1:08-CV-00399, 2009 WL 3199064, at *3 (S.D. Ohio Sept. 29, 2009).

Shortly after the second administrative hearing, on August 30, 2012, Plaintiff was evaluated by Dr. Jones.  PageID 1175-85.  Dr. Jones noted Plaintiff's diagnoses of bipolar disorder and antisocial personality disorder, and opined, *inter alia*, that he is "mildly" limited in his ability to understand, remember, and carry out simple instructions; "moderately"[4] limited in his ability to understand, remember, and carry out complex instructions, and interact appropriately with the public; and "markedly" limited in his ability to interact appropriately with co-workers and supervisors, and respond appropriately to usual work situations and changes in a routine work setting.  PageID 1183-84.

The ALJ gave "some" weight to Dr. Jones's opinion overall, but assigned "little weight" to her findings of marked impairment in social functioning and responding to work stress because:

> it appears she based this primarily on the claimant's subjective report.  As noted above, the claimant presented as polite, cooperative, and appropriate during his evaluation.  Moreover, the claimant's statements to Dr. Jones are inconsistent with his statements to the VAMC [Veterans Affairs Medical Center] psychiatrists.  As discussed above, VAMC mental health treatment notes indicate that the claimant was functioning better with no significant symptoms.  Thus, the undersigned finds that the findings and limitations of marked impairment provided by the consultative psychologist are not fully supported by the treatment records.

PageID 62.

Instead, the ALJ assigned "significant weight" to the ME's opinion that (1) Plaintiff's symptoms improved; (2) after December 31, 2010, Plaintiff no longer met Listing § 12.08; (3) he was then capable of performing "simple and detailed -- but not complex -- tasks, [having] occasional contact with supervisors, superficial contact with coworkers (no teamwork and no work in close contact with coworkers), no public contact, and once learned, no significant job

---

[4] "Moderate" functional limitations are "non-disabling," *see Sims v. Comm'r of Soc. Sec.,* 406 F. App'x 977, 980 (6th Cir. 2011), whereas "marked" and "extreme" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C), *et seq.*

changes."  PageID 61.  Plaintiff argues that the ALJ erred in discounting Dr. Jones's marked

limitations and relying on the ME's opinion.  Doc. 9 at PageID 1219-25.

The undersigned agrees with Plaintiff that the ALJ erred in relying on the ME's opinion

that medical improvement occurred as of January 1, 2011.  *See* PageID 56.  The ME testified that

Plaintiff:

> has told the treating source that his anger is now under control and his last
> manic episode was January 2010.  So, the notes, the actual treating notes are
> indicating that he's functioning a lot better and is not having any significant
> symptoms, except for depression . . . I don't have anything referred in the
> treatment record that would substantiate this level of limitation [referring to
> the marked restrictions in Dr. Jones's opinion].

PageID 135.  The ME went on to testify that "what is reflected in the records is that he has had

periods of time without any symptoms."  PageID 139-40.

However -- and significantly -- there are no treatment notes in the record from January 1,

2011 through February 1, 2012.[5]  The ME herself testified that "[t]he problem with this record is

that there are no records[,]" PageID 131, and "I don't have any records from 2011 and very few

from 2012."  PageID 145.  Further, while the ME's testimony suggests that Plaintiff, at some

point after January 1, 2011, made statements to his VAMC psychiatrist indicative of symptom

improvement, a review of the record reveals that the ME referenced an October 4, 2010

treatment note.  *See* PageID 1157 ("[v]eteran states that his last manic episode was in January

2010 . . . [v]eteran states that his anger is under control now").  Such an isolated statement --

made during the closed period of disability -- does not support a conclusion that Plaintiff's

symptoms remained under control during the entire period devoid of treatment notes, particularly

considering the nature of bipolar disorder which typically includes "periods of symptom

---

[5] Plaintiff testified that there was no gap in his treatment with the VAMC.  PageID 132.  It is thus unclear whether no records exist from this time period or whether they could not be obtained from the VAMC.

remission or improvement[.]"  *See generally Pierson v. Colvin*, No. 3:13-cv-319, 2015 WL 418079, at *5-6 (S.D. Ohio Jan. 30, 2015).

Accordingly, while the record suggests that Plaintiff's symptoms may have improved at some point in 2012 or 2013,[6] there is no evidence in the record upon which the ME could rely to conclude that such improvement occurred as of January 1, 2011.  The ALJ's reliance on her opinion -- to find medical improvement beginning on that date -- is, therefore, unsupported by substantial evidence and merits reversal.  PageID 56; *Couch,* 2012 WL 394878, at *10 (holding "[t]he burden of proof in establishing a medical improvement lies with the Commissioner"); *cf. Mullins v. Colvin*, No. 3:13-cv-226, 2014 WL 1382552, at *11 (S.D. Ohio Apr. 8, 2014) (finding error in the ALJ's reliance on the ME's opinion when there were no records "to provide a clear picture of the claimant's specific limitations").

## IV.

When the ALJ's non-disability determination is found unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits.  Generally, benefits may be awarded immediately "if all essential factual issues have

---

[6] For example, Global Assessment of Functioning ("GAF") scores in the 2012 and 2013 VAMC treatment notes range from 58 to 64, indicating mild to moderate symptoms.  PageID 1037, 1195, 1201.  GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM–IV").  "The most recent (5th) edition of the Diagnostic and Statistical Manual of Mental Disorders does not include the GAF scale."  *Judy v. Colvin*, No. 3:13cv257, 2014 WL 1599562, at *11 (S.D. Ohio Apr. 21, 2014); *see also* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013) ("DSM–V") (noting recommendations "that the GAF be dropped from [DSM–V] for several reasons, including its conceptual lack of clarity ... and questionable psychometrics in routine practice").  As set forth in the DSM–IV, however, a GAF score of 51–60 is indicative of "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  *Id.*  A GAF score of 61 to 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia)" or "some difficulty in social, occupational, or school functioning ... but generally functioning pretty well."  *Id.*  A GAF score of 71 to 80 indicates "no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)."  *Id.*

been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

All factual issues have not been resolved here. Remand for further proceedings is necessary for the ALJ to determine -- based on the evidence of record -- if Plaintiff experienced medical improvement and, if so, on what date such improvement began. On remand, the ALJ should weigh all opinion evidence anew and, if appropriate, utilize a ME.

## V.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.


Date:  February 8, 2016               *s/ Michael J. Newman*
                                      Michael J. Newman
                                      United States Magistrate Judge

## <u>NOTICE REGARDING OBJECTIONS</u>

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).